### UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA,     ) | |
|                    ) | |
|     Plaintiff,        ) | |
|                    ) | |
| v.                      ) | No. 1:21-cr-41-LEW |
|                    ) | |
| NICHOLAS PETTIS,       ) | |
|                    ) | |
|     Defendant.       ) | |

### DEFENDANT'S SENTENCING MEMORANDUM

NOW COMES Defendant, Nicholas Pettis, by and through counsel, David W. Bate, and offers the following memorandum in aid of sentencing.

1. In order to avoid unwarranted sentencing disparities, Mr. Pettis deserves a downward variance based on his agreement to a video change of plea and video sentencing hearing.

Due to the backlog of cases during the COVID-19 pandemic and to minimize the health risks associated with in-person hearings, the government has been recommending a 3 level variance since last year for most defendants who plead guilty and are sentenced by video. However, in certain cases, such as nonproduction child pornography cases, the government has declined to recommend such a 3 level variance for defendants who proceed by video.

Mr. Pettis's initial appearance before this Court was by video on April 13, 2021 when he orally waived his right to indictment (Doc. 13, 15) and pled guilty to the Information (Doc. 1). Mr. Pettis self-reported from Deer Isle to Somerset County Jail that same day as ordered by the Court (Doc. 15). He is scheduled to be sentenced by video on October 25, 2021 (Doc. 29). Mr. Pettis further eased the burden of the government and Court by giving a complete confession at

the time of agents' execution of the search warrant, even directing agents to storage folders on his device containing child pornography.

The government is not expected to recommend a 3 level downward variance for Mr. Pettis for proceeding by video.  Mr. Pettis respectfully requests that the Court take judicial notice of other defendants in this District who have received a 3 level downward variance on the government's recommendation due to waiver of in-person hearings.

A sentencing court must consider a number of factors, including "the need to avoid unwarranted sentencing disparities among similarly situated defendants." United States v. Azor, 881 F.3d 1 (1st Cir. 2018) (citing 18 U.S.C. § 3553).  The Court, not the government, is the final arbiter of whether a defendant is entitled to a variance. Gall v. United States, 552 U.S. 38, 49 (2007).  See also United States v. Fagan, 2:19-cr-00123-DBH, pp. 37-38 (Sentencing Transcript, 9/20/21) (attached as Exhibit 1) (granting 3 level variance without government support based on video plea and video sentencing hearings, as well as harsher incarceration during pandemic).

Because Mr. Pettis confessed immediately at the inception of his contact with government agents, because he waived his right to indictment and pled guilty by video, because he immediately self-reported to jail, because he is waiving his right to an in-person sentencing hearing, because pretrial and postconviction imprisonment during the pandemic is harsher than "the before times," and because the Sentencing Guidelines have already accounted for any disparity between his crime and other crimes for which the government *has*

recommended a 3 level video variance, the Court should grant Mr. Pettis a 3 level variance under § 3553(a).

2. Domestic violence survivors' attraction to media involving similar trauma.

Mr. Pettis suffered serious sexual violence from a family member, his sister, when he was a young child.  PSR ¶¶37, 38, 68.  Mr. Pettis has never received counseling or treatment for that domestic sexual violence trauma.

Mr. Pettis reported to Probation that viewing the child pornography "made him 'feel like when he was a kid' during periods of sexual abuse, legitimizing him as a victim, emphasizing that his abuse was real and life-changing and not his fault."  PSR ¶15.  About three weeks ago, long after Mr. Pettis made this statement, undersigned counsel heard a radio news article that seemed to capture, in part, this difficult concept.  The news article referenced a 2020 University of South Carolina doctoral dissertation by Kelli S. Boling entitled, "Fundamentally Different Stories that Matter: True Crime Podcasts and the Domestic Violence Survivors in their Audiences."[1]

The USC study focused on domestic violence survivors and their interest in true crime podcasts.  One would assume that domestic violence survivors would be viscerally repulsed by true crime podcasts; after all, the in-depth analysis and discussion of actual domestic violence crimes might trigger repressed and traumatizing memories.  Interestingly, the USC study found that for some domestic

---

[1] Retrieved from https://scholarcommons.sc.edu/etd/5959 (attached as Exhibit 2).

violence survivors, the true crime podcasts served to normalize the survivors' trauma and, therefore, proved potentially therapeutic. Boling at 97, 106, 194, 207. This was important for these domestic violence survivors because they often feel marginalized and closeted due to the secrecy and shame that often surrounds domestic violence. Id. at 199, 201, 204.

There are many distinctions between the USC study on true crime media and child pornography, the foremost distinction being that child pornography is illegal for obvious and legitimate reasons. However, the USC study helps us understand – and helps Mr. Pettis understand – how some domestic violence victims like the USC study participants and Mr. Pettis himself would be attracted, rather than repulsed, to media analysis or depictions of violence similar to that which caused their trauma in the first place. If Mr. Pettis can better understand that attraction, through whatever treatment is provided through the Bureau of Prisons and while on supervised release, then he is more likely to be able to avoid recidivating.

The USC study also assists the Court in understanding under § 3553(a)(1) how a particular characteristic of the defendant – Mr. Pettis's sexual abuse by his sister as a young child – first, would leave him struggling to come to terms with the trauma and shame associated with past sexual abuse and, second, could lead to seeking out and possessing child pornography. Neither the USC study nor Mr. Pettis himself would support an argument that his traumatic past justifies his possession of child porn. Nevertheless, such possession is perhaps better understood as not being rooted in a desire to harm

children, which is consistent with his statements to the police during his immediate confession during the search warrant execution.

    3. <u>Testing indicates Mr. Pettis's low risk of recidivism</u>

    The PSR describes some of the key issues raised in the Psychosexual Evaluation by Elise C. Magnuson, Psy.D, LCSW (2/16/21) (attached as Exhibit 3).  PSR ¶44.  An important, additional sentencing factor raised in Magnuson's Evaluation is that standardized, objective testing indicates that Mr. Pettis is "low risk." <u>Id.</u> at 6.  The Child Pornography Offender Risk Tool places Mr. Pettis's risk of re-offending at 4.2%, <u>id.</u>, compared to the Sentencing Commission estimate that 27.6% of nonproduction child pornography offenders were rearrested within three years.[2]

    4. <u>Application of some § 2B2(b) enhancements overstates Mr. Pettis's individual culpability.</u>

    The PSR's application of following enhancements under § 2B2(b) results in a 13 level increase under the Guidelines, increasing the midrange of the proposed sentencing range from 37 months (OL 20/CHC I) to 151.5 months (OL 33/CHC I).  According to the Sentencing Commission,[3] these enhancements were applied by sentencing courts in fiscal year 2019 at the rates depicted in the last column:

| USSG Section | Subject | Levels Added | % Applied |
|---|---|---|---|
| § 2G2.2(b)(2) | Prepubescent minors, PSR ¶18 | +2 | 95% |
| § 2G2.2(b)(4)(A) | Sadistic or masochistic, PSR ¶20 | +4 | 84% |
| § 2G2.2(b)(6) | Use of a computer, PSR ¶21 | +2 | 95% |
| § 2G2.2(b)(7)(D) | Over 600 images, PSR ¶22 | +5 | 77% |
| | Total enhancement: | +13 | |

---

2 https://www.ussc.gov/research/research-reports/federal-sentencing-child-pornography-non-production-offenses
3 https://www.ussc.gov/research/research-reports/federal-sentencing-child-pornography-non-production-offenses.

Therefore, these enhancements work to skew almost every § 2B2 defendant's guideline range upward, yet fail to meaningfully assess the culpability of the average or individual § 2B2 nonproduction defendant.  For this and other reasons, § 2B2 nonproduction defendants receive downward variances in 59% of the cases in fiscal year 2019.[4]

The Guidelines Commission is in accord.  In the its June 29, 2021 "Federal Sentencing of Child Pornography: Non-Production Cases,"[5] the Commission wrote,

> As courts and the government contend with the <u>outdated statutory and guideline structure</u>, sentencing disparities among similarly situated non-production child pornography offenders have become increasingly pervasive. Charging practices, the resulting guideline ranges, and the sentencing practices of judges have all contributed to some degree to these disparities.

(Emphasis added.)  Non-production child pornography sentences have increased since 2005.  <u>Id.</u>

Mr. Pettis is also contesting the 5 level distribution enhancement in PSR ¶19, although that enhancement is applied in 56.8% of possession cases and, therefore, falls within the margins of the argument above.  He asks that the Court either disregard the enhancements for the other provisions of § 2B2(b) or consider a variant sentence that reflects his culpability and risk of recidivism.

5. <u>Bureau of Prisons designation</u>

On grounds that Mr. Pettis is convicted of possession of child pornography; has a history of untreated sexual assaults that may have

---

4 https://www.ussc.gov/research/research-reports/federal-sentencing-child-pornography-non-production-offenses.
5 https://www.ussc.gov/research/research-reports/federal-sentencing-child-pornography-non-production-offenses.

caused, in part, him to commit this crime; and desires to treat any issues that may have caused him to commit this crime; he respectfully requests that the Court recommend that the Bureau of Prisons designate him to a facility that offers sex offender treatment.  Because he has two minor children living in Maine, Mr. Pettis requests that the Court recommend FMC Devins in Massachusetts, which is the federal prison with sex offender treatment closest to his family.[6]

Dated in Bangor, Maine this 18th of October, 2021.

/s/David W. Bate
Attorney for Defendant
Fed. Bar No. 2096
15 Columbia Street, Suite 301
Bangor, Maine  04401
(207) 945-3233
davidbatelaw@gmail.com

attach:  Ex. 1:  United States v. Fagan, 2:19-cr-00123-DBH
                 (Sentencing Transcript, 9/20/21).
         Ex. 2:  "Fundamentally Different Stories that Matter: True
                 Crime Podcasts and the Domestic Violence Survivors
                 in their Audiences," Kelli S. Boling (2020 Univ. So.
                 Car. Dissertation).
         Ex. 3:  Psychosexual Evaluation by Elise C. Magnuson, Psy.D,
                 LCSW (2/16/21).

---

6 See https://www.bop.gov/inmates/custody_and_care/sex_offenders.jsp.

8

## CERTIFICATE OF SERVICE

     I hereby certify that on the above date, I electronically filed this pleading and exhibits with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

     AUSA Chris Ruge, Esq.

                 /s/David W. Bate
                 Attorney for Defendant
                 Fed. Bar No. 2096
                 15 Columbia Street, Suite 301
                 Bangor, Maine  04401
                 (207) 945-3233
                 davidbatelaw@gmail.com